## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Cr. No. 04-1465 JH (ACE)

JOHN AARON BYRDSONG,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Suppress Evidence and Statements (Docket No. 19).  On October 6, 2004, the Court held an evidentiary hearing on the motion, at which Defendant was present.  Defendant was represented by Roger Finzel and the United States was represented by Rhonda Backinoff.  After considering the testimony and evidence presented at the hearing, along with the arguments of counsel and their written briefs, the Court concludes that the motion should be DENIED.

## FINDINGS OF FACT

Based upon the testimony presented and the exhibits admitted into evidence at the hearing, the Court makes the following factual findings.

Officer James Smid has worked for the New Mexico Department of Public Safety's Motor Transport Division for two years, during one of which he has been an officer.  Transcript of Proceedings Held October 6, 2004 ("Transcript") at p. 7.  He has attended the New Mexico State Police Academy and is certified by the North American Standard Commercial Vehicle Safety

Administration to conduct inspections of commercial vehicles.  Id. at pp. 7-8.  In addition, Officer

Smid has attended and successfully completed a variety of training sessions regarding law

enforcement, the inspection of commercial vehicles for both mechanical and administrative

compliance, drug interdiction, and narcotics recognition and investigation.  Id. at pp. 8-11.  *See

also* Government Exhibit 2.  Further, Officer Smid has ten years of experience as a commercial

truck driver.  Transcript at p. 11.  As a result of his training and experience, Officer Smid is

familiar with the state and federal regulations that apply to commercial motor vehicles.  Id.  As

part of his job duties, Officer Smid patrols New Mexico highways enforcing federal and state laws

applicable to both private and commercial vehicles.  Id. at p. 24.

On the morning of July 4, 2004, Defendant was driving a white commercial tractor/trailer

eastbound on Interstate 40 just east of the New Mexico/Arizona border near Gallup, New

Mexico.  Id. at pp. 32-33.  At the same time, Officer James Smid of the State of New Mexico's

Motor Transportation Division was driving his marked police car westbound on Interstate 40 in

the same area.  Id. at pp. 31-32.  Law enforcement had received notification from federal law

enforcement that the nation was on "high alert" due to the Independence Day holiday.  Id. at p.

21.

When Officer Smid met Defendant's tractor/trailer going in the opposite direction, he

looked for the required Department Of Transportation ("DOT") identification numbers on the

Defendant's vehicle.  Id. at p. 34.  Not seeing the required numbers, Officer Smid turned into the

highway median and headed east on Interstate 40.  Id.  When he caught up to Defendant's

vehicle, Officer Smid was then able to see that it did in fact display the required DOT numbers.

Id.  However, as he slowed down to drop alongside and then behind Defendant's truck, Officer

Smid noticed that the trailer carried two license plates, one laying on top of the other.  Id. at p.

35.  Government's Exhibit 6, admitted into evidence at the hearing, shows the condition of the

license plates at the time Officer Smid first observed them on the highway.  Id. at p. 36.

Seeing this, Officer Smid believed it to be a violation of New Mexico law.[1]  Id. at p. 37.

However, Officer Smid also testified that the presence of two license plates was also of particular

concern to him because in his experience it also raised the possibility that either the trailer or the

license plate had been stolen.  Id. at pp. 39-40, 58.  The Court finds this testimony to be both

logical and credible.  Thus, Officer Smid felt the need to determine if the top plate actually

belonged to the trailer.  Id. at p. 37, 39.  Accordingly, Officer Smid turned on his emergency

lights and pulled over Defendant's truck.

Both Defendant and Officer Smid pulled over on to the shoulder of the highway, with

Officer Smid's vehicle parked behind Defendant's tractor/trailer.  *See* Government's Exhibit 1.

While walking to the front of the rig to speak to Defendant, Smid looked at the undercarriage and

observed that the air tank (a component of the brake system) was improperly secured to the truck

with bungee cords, a violation of safety regulations that could result in the truck being taken out

---

[1]Specifically, Smid testified that he believed that the two license plates constituted the improper display of a license plate under NMSA 1978, § 66-3-18(C), which provides:

> No vehicle while being operated on the highways of this state shall
> have displayed either on the front or the rear of the vehicle any
> registration plate, including tab or sticker, other than one issued or
> validated for the current registration period by the department or any
> other licensing authority having jurisdiction over the vehicle.  No
> expired registration plate, tab or sticker shall be displayed on the
> vehicle other than an expired special registration plate which may be
> exhibited on the front of the vehicle.

*See also* Transcript at pp. 71-72.

of service.  Id.; Transcript at pp. 40-41, 52-54, 78-79.

Smid then stepped up into the cab of the truck and spoke to the defendant, informing him that he had stopped the truck for having two plates.  Id. at p. 41.  Defendant said that he could take one off if Smid wished.  Id. at p. 42.  Smid told Defendant that he was going to do a "Level 2 safety inspection" and asked for Defendant's license.  Id.  Defendant stated that he did not have a driver's license.  Id.  Smid then asked for defendant's medical card, logbook, bill of lading and tractor and trailer registrations–all documents that Defendant is required to keep in his possession while driving a commercial tractor/trailer.  Id. at p. 43.  Officer Smid questioned Defendant further about his documentation, but he was unable to provide Officer Smid with a driver's license or registration for the trailer.  Id. at p. 46.

During this time, Defendant repeatedly glanced back at the sleeping area of the tractor, which is located behind the driver and passenger seats.  Id. at pp. 44-45; *see also* Defendant's Ex. F. The curtain to the sleeper compartment was closed, and Officer Smid asked defendant if he had a co-driver.  Defendant said "no."  Transcript at p. 44.  Concerned about the possible presence of another person in the truck (and the danger that the presence of another person could pose to his personal safety), Officer Smid asked Defendant to open the curtain to the sleeper compartment, and Defendant moved it aside about three inches.  Id. at pp. 45-46.

During this exchange Officer Smid noticed a strong odor in the truck but was unable to identify it.  Id. at pp. 44-45.  Officer Smid then examined Defendant's logbook, during which time Defendant continued to repeatedly glance over his shoulder toward the sleeper compartment.  Id. at pp. 46-47.  Officer Smid then asked Defendant to open the curtain again so that he could verify that no one was there.  Id. at pp. 47-48.  Officer Smid testified that when Defendant complied, he

noticed Defendant's hand shaking.  Id. at p. 48.  Inside the curtain Officer Smid saw several large duffle bags, and he immediately noticed the very strong smell of raw marijuana, an odor he was trained to identify.  Id. at pp. 48-49.  Smid asked defendant what was in the bags; he responded, "Clothes."  Id. at p. 49.  Based on his previous experience as a commercial truck driver, Officer Smid did not find it credible that Defendant would be in possession of such a large quantity of clothes.  Id.  Officer Smid then felt one of the bags with his hand, finding it hard to the touch.  Id. at p. 50.  At this point, there is some ambiguity in the record as to whether Officer Smid opened one of the duffel bags himself, or Defendant opened it at Officer Smid's request.  *Compare* Transcript at p. 50 *with* Transcript at pp. 94-95.  However, unzipping the bag revealed bundles of shrink-wrapped marijuana.  Id.  at pp. 50-51, 94-96.  Smid then arrested the defendant and placed him in the back of his police unit.  Id. at pp. 50-51.  According to the videotape of the stop (Government's Exhibit 1), approximately three and a half minutes elapsed between the time Officer Smid first made contact with Defendant and the time he placed Defendant under arrest.

Thereafter, Defendant called a friend on his cell phone and made self-incriminating statements.  Law enforcement seized approximately 564 pounds of marijuana from Defendant's truck.  Id. at p. 52.

## DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures.  "The stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment."  *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991). To determine the reasonableness of such a seizure, the court must employ a dual inquiry: "[1] whether the officer's action was justified at its inception, and [2] whether [the action] was

reasonably related in scope to the circumstances which justified the interference in the first place."
*United States v. Dewitt*, 946 F.2d 1497, 1501 (10th Cir. 1991) (quoting *Terry v. Ohio*, 392 U.S.
1, 19-20, 88 S. Ct. 1868, 1878-79, 20 L. Ed.2d 889 (1968)); *see also United States v. Sharpe*,
470 U.S. 675, 682, 105 S. Ct. 1568, 1573, 84 L. Ed.2d 605 (1985); *Florida v. Royer*, 460 U.S.
491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983) ("The scope of the detention must be
carefully tailored to its underlying justification.").

## I.    THE PROPRIETY OF THE TRAFFIC STOP

In this case, the parties agree that the threshold issue for the Court is whether Officer
Smid's decision to conduct a traffic stop of the Defendant was proper.  Defendant contends that
there was no legal basis for the traffic stop, arguing that once Smid satisfied his first
inquiry—whether the truck displayed the proper DOT numbers—there was no valid reason to
stop the truck.  Although Defendant admits that an officer's reasonable suspicion that a traffic
offense has been or is being committed justifies a traffic stop, Defendant then suggests that Smid's
reason for pulling him over (the double license plate) was a mere pretext for the stop.

As an initial matter, the Court concludes that Officer Smid properly stopped the truck
based on reasonable suspicion of a traffic violation or the commission of a crime.  *See United
States v. Gregory*, 79 F. 3d 973, 978 (10th Cir. 1996).  "A routine traffic stop is analogous to an
investigative detention and is analyzed under the principles stated in *Terry v. Ohio*, 392 U.S. 1
(1968)."  *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001).  "To determine the
reasonableness of an investigative detention, we make a dual inquiry.  First, we ask whether the
officer's action was justified at its inception, and second, whether it was reasonably related in
scope to the circumstances which justified the interference in the first place."  *Id*. (internal

6

quotation marks omitted). "Thus, we assess the reasonableness of a traffic stop based on an observed violation by considering the scope of the officer's actions and balancing the motorist's legitimate expectation of privacy against the government's law-enforcement-related interests." *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001).

Under this analysis, the initial stop of Defendant's truck was proper. Officer Smid was able to observe that there were two license plates on Defendant's trailer, one placed over the other. First, a license plate violation may in and of itself provide a valid basis for a routine traffic stop. *See, e.g., United States v. Garcia*, 376 F.3d 648 (7th Cir. 2004); *United States v. Gomez Serena*, 368 F.3d 1037 (8th Cir. 2004); *United States v. Flores-Sandoval*, 366 F.3d 961 (8th Cir. 2004). The Court finds that, in light of the testimony and exhibits presented, Officer Smid's suspicion that Defendant had violated NMSA 1978, § 66-3-18(C) by improperly displaying a license plate was reasonable under the circumstances. Furthermore, Officer Smid had an even more compelling and valid alternative reason to conduct the stop–his reasonable suspicion that a crime may have been committed. Specifically, the placement of one license plate on top of another indicates the possibility of a stolen license plate or a stolen trailer. Officer Smid was entitled to stop Defendant's truck in order to investigate the possibility of such a crime. Accordingly, the initial stop of the truck was valid.

## II.     THE PROPRIETY OF THE SUBSEQUENT DETENTION, SEARCH, AND SEIZURE

Next, Defendant argues that Officer Smid's investigation improperly exceeded the scope of the initial stop. The Court disagrees. Almost immediately after Officer Smid had executed the stop and before he even spoke to Defendant, he noticed that the air tank was improperly secured

to the trailer with bungee cords.  This is a serious safety issue that Officer Smid was trained to detect and one that would justify both conducting a further safety inspection and taking the tractor/trailer out of service.  Next, when Officer Smid asked Defendant for his driver's license and registration for the trailer—documents routinely requested at virtually every traffic stop—Defendant was unable to provide them.  An officer conducting a routine traffic stop may inquire about "identity and travel plans," *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989), and may "request a driver's license and vehicle registration, run a computer check, and issue a citation."  *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988), *overruled on other grounds*, *United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir. 1995); *see also United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993).  Even after this information has been obtained, an officer may detain for further questioning if he has an "objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring" or if the suspect consents to further questioning.  *United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001) (quoting *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir.1994)).  This is particularly true where, as here, (1) the officer had reason to question whether either the license plate or the trailer had been stolen, and 2) the officer was conducting a safety inspection of the vehicle based upon a safety violation he observed immediately after the stop.  Therefore, this line of questions by Officer Smid was not improper.

Defendant also challenges Officer Smid's request that Defendant open the curtain to the sleeper area.  As a preliminary matter, the Court observes that in *Gustafson v. Florida*, 414 U.S. 260, 94 S. Ct. 488, 38 L. Ed.2d 456 (1973), the Supreme Court held that a driver who lacks a license is subject to full custodial arrest and thorough search.  *Gustafson* notwithstanding, Officer

Smid's request that Defendant open the curtain was a reasonable in light of his need to determine

if there was another person in the vehicle in order to secure his own safety.  Those same

officer-safety considerations prompted the Supreme Court in *Michigan v. Long*, 463 U.S. 1032,

103 S. Ct. 3469, 77 L. Ed.2d 1201 (1983), to hold that when a police officer lawfully stops a

vehicle and possesses "a reasonable belief based on 'specific and articulable facts' ... that the

suspect is dangerous and ... may gain immediate control of weapons," the officer may search the

areas of the passenger compartment of the automobile where "a weapon may be placed or

hidden."  *Id*. at 1049, 103 S.Ct. 3469 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). The Court

based its reasoning in part on the reality that such stops involve an investigation " 'at close range'

when the officer remains particularly vulnerable in part because a full custodial arrest has not been

effected, and the officer must make a 'quick decision as to how to protect himself and others from

possible danger....'"  *Id*. at 1052, 103 S.Ct. 3469 (quoting *Terry*, 392 U.S. at 24, 28, 88 S. Ct.

1868).  Thus, in the context of a lawful automobile stop when the officer is presented with an

objectively suspicious and potentially dangerous circumstance, the officer may conduct what

amounts to a " 'frisk' of an automobile for weapons." *Maryland v. Buie*, 494 U.S. 325, 332, 110

S.Ct. 1093, 108 L.Ed.2d 276 (1990) (construing *Long* in the context of upholding, for safety

reasons, a protective sweep of a house where a suspect had been arrested).

And finally, in *Maryland v. Wilson*, the Supreme Court, relying again on the same public

interest in police safety, held that police officers making lawful traffic stops could require

passengers to step out of the vehicle as a matter of course.  *See* 519 U.S. 408, 117 S. Ct. 882,

886, 137 L. Ed. 2d 41 (1997).  Explaining its rationale, the Court stated that "danger to an officer

from a traffic stop is likely to be greater when there are passengers in addition to the driver in the

9

stopped car." *Id.* Similarly, the Fourth Circuit Court of Appeals has held that officers approaching a vehicle with heavily tinted windows could open its doors to determine "whether the vehicle is occupied by one or several persons and whether the vehicle's occupants are armed or have access to weapons." *United States v. Stanfield*, 109 F.3d 976, 982 (4th Cir.1997).

In light of these authorities, as well as Officer Smid's concern that there was a person hidden in the sleeping areas based on his observation of Defendant repeatedly glancing toward the curtain, the Court finds that Officer Smid had a reasonable basis to request that Defendant open that curtain so that he could determine, for his own safety, if there was another person present in the tractor.

Finally, Defendant argues that Officer Smid's actions in opening the Defendant's duffel bag consisted of an improper search. As a preliminary matter, the Court notes that there is some ambiguity in the record as to whether Officer Smid opened the bag, or whether Defendant opened the bag at Officer Smid's request. *Compare* Transcript at p. 50 *with* Transcript at pp. 94-95. This, in turn, raises questions of whether Officer Smid even conducted a search, and if so, whether Defendant consented to such search. However, the Court need not reach these issues because even if Officer Smid conducted a search without Defendant's consent, he had probable cause to do so.

A warrantless search of a vehicle is valid if it is based on probable cause. *See Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 (1925). "Probable cause to search a vehicle is established if, under the totality of the circumstances there is a fair probability that the car contains contraband or evidence." *United States v. Nielsen*, 9 F.3d 1487, 1489-90 (10th Cir. 1993) (internal quotation marks omitted). "Probable cause is measured against an objective

standard"; hence, "[t]he subjective belief of an individual officer as to whether there is probable cause ... is not dispositive." *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999) (internal quotation marks omitted). "In determining whether probable cause exists, an officer may draw inferences based on his own experience." *United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir. 2002). "It is well established that although probable cause to search a car may not exist when a car is first stopped for a traffic citation, it can arise during the course of the stop." *United States v. West*, 219 F.3d 1171, 1178 (10th Cir.2000) (citing *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980)).

In *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir.1995), the court stated that "If an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment," but not the entire vehicle. That is precisely what happened here—presuming, without deciding, that Officer Smid conducted a search of the duffel bags, an officer's detection of the odor of drugs can itself provide sufficient basis for probable cause. *See, e.g., United States v. West*, 219 F.3d 1171, 1178 (10th Cir.2000) (finding probable cause for search where officer smelled methamphetamine during traffic stop); *United States v. Downs*, 151 F.3d 1301, 1303 (" '[T]he odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.' ") (quoting *United States v. Morin*, 949 F.2d 297, 300 (10th Cir.1991)). "An officer's detection of the smell of drugs ... in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." *West*, 219 F.3d at 1178; *see also United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir.1999) (holding that odor of raw marijuana, combined with nervous behavior and vague description of travel plans, satisfied probable cause standard). When an officer encounters the

11

smell of raw marijuana, there is the fair probability that the vehicle is being used to transport marijuana "and that the marijuana has been secreted in places other than the passenger compartment." *Downs*, 151 F.3d at 1303.

In this case, Officer Smid not only detected a strong odor of raw marijuana (testimony that the Court finds credible in light of the large amount of raw marijuana found in the truck), but also had observed Defendant's nervous behavior in glancing toward the sleeper area where the marijuana was hidden and his improbable explanation that the large duffel bags contained clothes. Under the totality of the circumstances, Officer Smid had probable cause to search the bags.

WHEREFORE, Defendant's Motion to Suppress Evidence and Statements (Docket No. 19) is DENIED.


UNITED STATES DISTRICT JUDGE