# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        Cr. No. 04-1465 JH

JOHN AARON BYRDSONG,

        Defendant.

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court on *Defendant's Motion to Dismiss Indictment Due to Bad Faith Destruction of Potentially Exculpatory Evidence* [Doc. No. 43]. The primary issue before the Court is whether the government destroyed the evidence in question in bad faith, or merely through negligence or carelessness. On July 20, 2005, the Court held a hearing on the motion, at which Rhonda Backinoff represented the United States and Charles Knoblauch represented the Defendant, who was present. Both counsel offered oral argument, and the government presented the Court with exhibits (although the government never moved for their admission into evidence). Although the Court anticipated a full-blown evidentiary hearing, neither party offered testimony of witnesses. After a review of the law, the evidence, and the arguments of counsel, the Court concludes that the motion should be denied.

## FACTUAL BACKGROUND[1]

       On the morning of July 4, 2004, Defendant was driving a commercial tractor-trailer east on

---

[1] The facts relating to the traffic stop, the discovery of the marijuana, and Defendant's arrest are taken from testimony and other evidence admitted at the October 6, 2004 hearing on Defendant's motion to suppress.

Interstate-40 ("I-40") in McKinley County near Gallup, New Mexico. At the same time, New Mexico Department of Public Safety-Motor Transport Division Officer James Smid was driving west on I-40. Smid turned around and caught up to the truck, at which point he was able to see that the trailer had two license plates. One plate was on top of the other. Smid decided to pull Defendant's truck over to the side of the road.

Smid then talked to the Defendant, asking him why the truck had two plates. The curtain to the sleeper compartment was closed, and Smid asked defendant if he had a co-driver. Defendant said "no." Concerned about the possible presence of another person in the truck, Smid asked Defendant to open the curtain to the sleeper compartment, and Defendant moved it aside about two inches. Smid questioned Defendant further, and then asked him to open the curtain again. Smid claims that when Defendant complied, he noticed defendant's hand shaking. Inside the curtain Smid saw several large duffle bags and noticed the smell of marijuana. Smid asked Defendant what was in the bags; he responded, "clothes." Smid asked Defendant to open one of the bags, at which point Smid could see bundles of plastic shrink-wrapped material. Smid then arrested the Defendant for possession of marijuana, which was seized and weighed at 477 pounds of marijuana in 23 separate bundles. Government agents "field tested" the marijuana at the time of defendant's arrest. Also, representative samples were taken from the bulk evidence, photographed, and sent to the Drug Enforcement Administration ("DEA") laboratory in order to confirm the initial analysis. Both the samples and the bulk evidence were maintained by the DEA.

On approximately July 6, 2004, the DEA sent a letter to counsel for the government stating that the bulk marijuana would be destroyed within 60 days in accordance with their standard procedures. On July 8, 2004, the Court held a preliminary hearing in this matter, and the government

filed its indictment on July 27, 2004. Assistant Federal Public Defender Roger Finzel represented Defendant in the early stages of this case.[2] Sometime in August of 2004, counsel for the government sent Mr. Finzel a letter requesting permission to destroy the bulk marijuana. Mr. Finzel responded that he did not want the evidence to be destroyed. *See* Affidavit of Roger Finzel. On September 3, 2004, counsel for the government wrote to the DEA, asking that the evidence be preserved. Despite that request, the DEA destroyed the bulk evidence on September 27, 2004, although at the time neither attorney was aware of that fact.

On October 6, 2004, the Court held a hearing on Defendant's motion to suppress the marijuana.[3] Sometime thereafter, counsel made arrangements for Mr. Finzel to view the bulk evidence on November 8, 2004. On the morning of that day, the government informed Mr. Finzel that the evidence had been destroyed some time in September of 2004.[4] However, copies of the DEA's photos and lab reports, as well as the representative samples of the marijuana taken from the bulk packages, are still available.

## DISCUSSION

Defendant asserts that he was not aware that the truck he was driving contained marijuana. In his motion to dismiss, Defendant argues that if Officer Smid testifies that he could smell the marijuana, then that implies that Defendant, the driver of the truck, could smell it too and therefore was aware of the presence of the drugs. Defendant asserts that there was no odor in the cabin of the

---

[2] On March 16, 2005, Mr. Finzel filed a motion to withdraw as counsel for Defendant, which the Court granted on April 18, 2005.

[3] On October 22, 2004, the Court denied Defendant's motion to suppress.

[4] It is unclear when counsel for the government discovered that the evidence had been destroyed.

3

tractor-trailer, and wished to challenge Smid's testimony with expert testimony of his own. Presumably, Defendant believes that, given the nature of the marijuana and its packaging, such an expert would have testified that no detectable odor would have existed in the truck. In order to accomplish this, Defendant argues that his attorney and expert witness needed to have an opportunity to inspect the marijuana and its original packaging. As such, Defendant contends that the bulk evidence was potentially exculpatory, and its destruction has hindered his ability to mount a defense.

Under the Due Process clause of the Fourteenth Amendment, the Supreme Court has developed "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). The Court has specified that, to the extent the Constitution imposes a duty upon the government to preserve evidence, "that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense"—i.e., evidence that is constitutionally material. *Trombetta*, 467 U.S. at 488-89, 104 S.Ct. at 2533-34.

To be constitutionally material under *Trombetta*, evidence must: (1) "possess an exculpatory value that was apparent [to the government] *before* the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489, 104 S.Ct. at 2534 (emphasis added). The mere possibility that lost or destroyed evidence could have exculpated a defendant is not sufficient to satisfy *Trombetta*'s requirement that the exculpatory value be "apparent" to the police before destruction. *Arizona v. Youngblood*, 488 U.S. 51, 56 n.*, 109 S.Ct. 333, 336 n.*, 102 L.Ed.2d 281 (1988).

However, the exculpatory value of evidence often is not apparent on its face. The Supreme

Court has held that "if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 910(10th Cir. 1994) (citing *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337). The Supreme Court defined "potentially useful evidence" as evidence of which "no more can be said that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57, 109 S.Ct. at 337. Thus, destruction of potentially exculpatory evidence may constitute denial of due process if the evidence is destroyed in bad faith. *Id.* at 58. "[M]ere negligence on the government's part in failing to preserve such evidence is inadequate for a showing of bad faith." *Bohl*, 25 F.3d at 912; *United states v. Parker*, 72 F.3d 1444, 1452 (10th Cir. 1995). The burden to show bad faith is on the defendant. *United States v. Molina-Cuertas,* 952 F.2d 345 (10th Cir. 1991).

Here, the *Trombetta* standard of "apparent" exculpatory evidence has not been met, because the value in the evidence lay only in the potential results of any tests that an expert might have conducted on the bulk marijuana and its packaging to determine whether a detectable odor would have escaped into the cab of the truck. It cannot be said that the bulk marijuana was patently exculpatory on its face. However, in theory the evidence had the *potential* to be useful to Defendant had it survived long enough to be tested by his expert. Thus, the Court will apply the *Youngblood* test. *See Bohl*, 25 F.3d at 910.

In applying the *Youngblood* test, the Court turns to the Tenth Circuit's thorough and well-reasoned opinion in *Bohl*. In that case, the defendants had been convicted of submitting false claims for payment and mail fraud in connection with a government contract to construct radar and radio transmission towers. *See* 25 F.3d at 906-07. Under the contract, the defendants agreed to build the

5

towers with steel of a particular quality.  After one of the towers fractured, government testing revealed that the materials used were not up to specifications.  *Id*. at 907.  Both before and after the government filed criminal charges, defendants repeatedly requested access to the supposedly non-conforming towers in order to conduct their own tests on the materials, but the requests went unanswered.  Id. at 907-08.  Ultimately, defendants received only a portion of one tower leg and shavings extracted from legs of two other towers, which was not enough for defendants to conduct their own scientific tests.  *Id*. at 908.  Finding that the exculpatory value of the towers was "latent, rather than patent," *id*. at 910, the court in *Bohl* applied the *Youngblood* test.

     First the court analyzed the first prong of the *Youngblood*, first determining whether the steel of the destroyed towers constituted potentially exculpatory evidence.  *Id*.  The court observed that the defendants had presented substantial evidence that the tower legs might have produced exonerating evidence.  They had provided expert testimony explaining why the metal shavings were insufficient for accurate testing and detailing the inaccuracies, limitations and weaknesses of the government's testing procedures. Id. at 910-11.  By contrast, Defendant here has presented no such evidence.  Counsel for the Defendant has argued that an expert should have been permitted to examine the bulk marijuana and its packaging for potentially exculpatory evidence.  Much more probative would have been the presentation of *evidence* by the Defendant regarding the types of testing he or she would have performed had the evidence not been destroyed, the strength of the odor that would be emitted by hundreds of pounds of marijuana, and the necessary features of any packaging that would be necessary to contain that odor.  However, the Defendant has presented the Court with only the argument of counsel on this score.  In this respect, this case is distinguishable from *Bohl*.

Even had the Defendant satisfied *Youngblood*'s first prong, he must still prove the second: that the government destroyed the evidence in bad faith. The issue of bad faith under *Youngblood* is a mixed question of law and fact in which the quintessential factual question of intent predominates. In this case, Defendant has not come forward with sufficient evidence to meet its burden under *Youngblood* to show that the government acted in bad faith when it destroyed the bulk marijuana. In fact, other than the affidavit of Mr. Finzel (which was filed on July 20, 2005 but never referenced by either party at the hearing held on that date), the Defendant presented no evidence whatsoever.

Although the parties appear to agree that Mr. Finzel made a timely request that the evidence be preserved before the DEA destroyed it, there is a dispute among counsel as to the specificity of the content of those communications, as well as the timing of Mr. Finzel's request to inspect the bulk marijuana. What is undisputed is that as of September 3, 2004, counsel for the government knew that Mr. Finzel did not want the evidence destroyed and that on that date she wrote to the DEA to request that they preserve it. Thus, it is reasonable to assume that Defendant timely placed the government on notice of his belief that the evidence was exculpatory. However, unlike the defendants in *Bohl*, the Defendant here did not support that speculative and conclusory position with objective, independent information. *See Bohl*, 25 F.3d at 911-12. This case is also distinguishable from *Bohl* in that the bulk marijuana does not appear to be central to the government's case, as the steel towers were in *Bohl*. In that case, the chemical composition of the towers was a key issue in the case; here there appears to be no dispute that the packages found in the truck driven by Defendant contained marijuana.

The Court finds the destruction of the bulk evidence in this case to be disturbing, particularly in light of the fact that Mr. Finzel made a timely request that it be maintained. Despite a similar

request from counsel for the government, the DEA destroyed the evidence and has offered this Court no explanation for its actions. However, the absence of such an explanation is not determinative. *Id.* at 912 (citing cases). It is Defendant's burden to show that the destruction of the evidence was the result of bad faith, and that burden has not been met. Indeed, as even Defendant's counsel argued at the July 20, 2005 hearing, it appears that this was a case in which bureaucratic procedures providing for the destruction of bulk marijuana "steamrolled" over the Defendant's request. As a result, the Court is forced to conclude that the destruction of the bulk evidence in this case stemmed not from bad faith, but rather from an appalling carelessness by the government.

    IT IS THEREFORE ORDERED that *Defendant's Motion to Dismiss Indictment Due to Bad Faith Destruction of Potentially Exculpatory Evidence* [Doc. No. 43] is DENIED.

    _____
    UNITED STATES DISTRICT JUDGE